Gabriela M. Torres (CA Bar No. 277299)
Gabriela@gabrielamtorreslaw.com
**GABRIELA M. TORRES LAW**
4225 Executive Square
Suite 600, PMB 6053
La Jolla CA 92037
Tel: (619) 343 3376

Attorney for Plaintiff

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| X.Y., a minor, by and through his Guardian ad Litem, Shao Chi Tung,<br><br>Plaintiff,<br><br>vs.<br><br>San Francisco Boys Chorus,<br><br>Defendant | Case No.: _____<br><br>PLEADING TITLE |

**INTRODUCTION**

1. This case arises from the San Francisco Boys Chorus's ("SFBC") removal of X.Y.[1], a seven-year-old boy[2] with autism, from its mandatory overnight camp, a requirement for continued participation in the Intermediate Choir, and his subsequent expulsion from SFBC. The expulsion was the result of disability discrimination, SFBC's refusal to provide reasonable accommodation, its failure to investigate peer and behavioral incidents, and its lack of disability awareness and inclusive policies and practices.

---

[1] Pursuant to Federal Rule of Civil Procedure 5.2(a)(3) and Civil Local Rules 5-1(c)(5)(B), Plaintiff's full name is withheld and only initials are used because he is a minor.
[2] X.Y. was 7 years old at the time of the expulsion from SFBC but has since turned 8.

1

2. Autism is a neurodevelopmental disability that affects communication, social interaction, and behavior, and individuals with autism are entitled to protection under the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act.

3. X.Y. is a minor child with Autism Spectrum Disorder (Level 1), a disability that manifests in multiple ways, including significant expressive and pragmatic language impairments and difficulties in social settings.

4. X.Y. joined SFBC in January 2024 after his family learned about the program through his school newsletter.

5. He began as an Apprentice 1, moved to Apprentice 2 in September 2024, and advanced to the Intermediate program in March 2025 after passing his promotion assessment.

6. As part of the Intermediate program, X.Y. was required to participate in a week long overnight camp during the summer of 2025.

7. Before camp, X.Y.'s mother, Ms. Tung, informed SFBC of his autism diagnosis, explained how his disability manifests, and requested basic accommodation. Although SFBC initially assured her that support would be provided, it later denied those accommodations, refused to permit brief parent contact during a stressful episode, failed to fairly investigate incidents involving peers, failed to follow its own internal policies concerning rules and consequences, and ultimately excluded X.Y. from the program without justification or written notice to his parents.

8. Plaintiff seeks injunctive relief under Title III of the ADA and damages and restitution under California law. Section 504 of the Rehabilitation Act is pled in the alternative and will be confirmed in discovery.

**JURISDICTION AND VENUE**

9. This Court has federal-question jurisdiction over Plaintiff's claims under Title III of the Americans with Disabilities Act ("ADA"). 28 U.S.C. § 1331; 42 U.S.C. § 12188. The Court may award fees and costs to a prevailing party. 42 U.S.C. § 12205. The Court also has authority to issue declaratory relief. 28 U.S.C. §§ 2201–2202.

10. The Court has supplemental jurisdiction over the related California claims, including the Unruh Civil Rights Act, the Disabled Persons Act, negligence (including negligent supervision/training), breach of contract, the Unfair Competition Law, and declaratory relief because they form part of the same case or controversy and arise from a common nucleus of operative fact. 28 U.S.C. § 1367(a). Exercising supplemental jurisdiction will promote judicial economy and consistency; none of the factors in § 1367(c) warrants declining jurisdiction.

11. Section 504 of the Rehabilitation Act is pled in the alternative under 29 U.S.C. § 794. On information and belief, to be confirmed in discovery, Defendant receives federal financial assistance. Jurisdiction for a § 504 claim lies under 28 U.S.C. § 1331, and fees are available under 29 U.S.C. § 794a.

12. Venue is proper in this District under 28 U.S.C. § 1391(b)(1)– (2) because (a) Defendant "resides" in this District for venue purposes, see § 1391(c)(2), and (b) a substantial part of the events or omissions giving rise to the claims occurred here, including program administration and the exclusion decision. Assignment to the San Francisco Division is proper under Civil L.R. 3-2 because Defendant is based in San Francisco and material events occurred in counties assigned to the San Francisco venue.

13. The Court has personal jurisdiction over Defendant. General jurisdiction exists because Defendant is domiciled and has its principal place of business in California. Specific

jurisdiction independently exists because Defendant purposefully directs and provides youth music programs to residents of this District, the claims arise out of those forum-related contacts, and exercise of jurisdiction is fair and reasonable. Plaintiff also has Article III standing for injunctive relief because he intends to participate in Defendant's programs in the future if policies are corrected and faces a real and immediate threat of continued unequal access absent court-ordered relief.

**PARTIES**

14. Plaintiff X.Y. is a minor who resides in California. He has an autism spectrum disorder with expressive/pragmatic language impairments that substantially limit major life activities, including communication and social interaction.

15. Plaintiff proceeds by and through his mother, Ms. Tung, who will submit a contemporaneous application for appointment as guardian ad litem under Fed. R. Civ. P. 17(c) and Civil L.R. 17-1.

16. Defendant San Francisco Boys Chorus ("SFBC") is a nonprofit entity headquartered in San Francisco, California that offers youth music education and performance programs to the public, including a required overnight camp tied to the Intermediate Choir. SFBC operates places of public accommodation within the meaning of Title III. See 42 U.S.C. § 12181(7).

17. SFBC is a private entity operating a place of public accommodation within 42 U.S.C. § 12181(7), including a place of education and/or recreation, and is not a religious organization or controlled by one.

**FACTS**

**A. Participation in the Chorus and Pre-Camp Notice**

18. X.Y. was only six years old when he joined the San Francisco Boys Chorus ("SFBC") in January 2024. Singing quickly became his passion. Twice a week he eagerly attended

rehearsals, and he proudly sang at public concerts and even performed on the field at Oracle Park during San Francisco Giants games. For a boy with autism who often struggled socially, the Chorus gave him a place to shine.

19. His family paid about $4,000 per year so he could be part of the program. For boys in the Intermediate Choir, SFBC required attendance at a week-long overnight summer camp. Camp fees were non-refundable, and participation was mandatory to stay in the program.

20. Knowing her son's challenges, X.Y.'s mother, Ms. Tung, carefully prepared. On June 10, 2025, she emailed the Program Administrator and Camp Director to disclose X.Y.'s autism diagnosis and to request straightforward supports: structured transitions, clear directions, patience with follow-up questions, permission for a small white-noise machine to help him sleep, placement near a bathroom, a brief parent call if needed for regulation, and assignment to an experienced counselor to help deal with situations. She also asked that he room with a familiar peer so he would feel secure.

21. On June 11, 2025, the Program Administrator responded with assurances. Staff and the camp nurse would be prepared, the white-noise machine was allowed, bathrooms were centrally located, and staff would try to place X.Y. closer to them. He confirmed that the roommate preference was noted, that counselors would be briefed on X.Y.'s needs, and that if staff could not resolve a problem, parents would be called.

22. X.Y. had successfully participated in SFBC's week-long day camp in 2024 and, until the 2025 summer camp at issue, had no history of behavioral concerns at SFBC. It was only after his mother disclosed his autism diagnosis that problems and complaints began.

**B. Camp Start, Early Status, and Parent Requests for Updates**

23. The required camp took place June 22–29, 2025 at Pacific Union College in Angwin, California. Attendance was mandatory for the Intermediate Choir.

5

24. On June 22, the Program Administrator told parents that counselors were getting to know the boys and that SFBC would call if a child was homesick or if staff could not manage an issue. Early reports about X.Y. were positive: he followed directions, participated appropriately, and joined in activities. The Camp Director said photos would be posted to the blog.

25. On June 23 and 24, when X.Y. did not appear in blog photos, Ms. Tung asked for updates. The Camp Director replied that X.Y. had been dancing during activities, attending classes and meals, and adjusting well. She promised to post more photos

**C. Late-Night Removal Directive; Denial of Agreed Supports**

26. Late on June 24, the Program Administrator emailed Ms. Tung noting behavioral concerns concerning X.Y..

27. In his email, the Program Administrator reported that X.Y. "has not been respecting boundaries," referencing a dorm-room dispute during rest time and an allegation from a movement class in which X.Y. allegedly touched another child's "privates" during an activity where the instructor had encouraged physical contact between students. The Program Administrator further stated that X.Y. was "bothering" other boys. X.Y.'s roommate was abruptly removed from their shared room, leaving him to sleep alone, and his parents were instructed to pick him up the following morning.

28. That night, Ms. Tung spoke with the Program Administrator and explained how X.Y.'s disability often caused confusion with instructions, difficulty with social communication, and an inability to advocate for himself when stressed.

29. In the early hours of June 25, Ms. Tung followed up by email, emphasizing that X.Y. had never exhibited inappropriate-touching behaviors at school or prior camps. She requested a neutral, child-appropriate investigation into the incident, including interviews of the witnesses,

age-appropriate definitions of "private parts," and clarification of the circumstances concerning the movement class and the exercise that involved touch. She also asked for a short call with X.Y. to help him communicate and explain what happened since his disability makes self-advocacy difficult for him.

30. Later that day, SFBC told the family that the conduct might have been age-typical or accidental and that X.Y. could remain at camp. The family asked for the agreed-upon noon call as a regulation support. SFBC declined, saying frequent calls were discouraged.

31. That same day, text messages from the Program Administrator described X.Y. as attentive to teachers, careful about being on time, and "doing fine."

32. Yet on June 26, SFBC abruptly decided that X.Y. must leave camp because they believed he was lying about the movement class behavior. His parents were informed without explanation, and their questions went unanswered.

33. X.Y. was picked up by his parents the day before his birthday on June 26, 2025.

34. When X.Y.'s parents arrived to pick him up from camp, they were given no explanation of the reasons for his removal or of any investigation. Instead, they were told that X.Y. had wet the bed, a claim contradicted by the fact that all of his bedding was clean and dry at pickup.

35. The Camp Director later told Ms, Tung she thought the process was unfair. She confirmed she had approved simple accommodations, a daily parent call, assignment to a senior counselor, and consultation with X.Y.'s regular teacher but said artistic leadership had overruled her. The camp nurse never met with X.Y. during the incidents. The promised bathroom-proximity placement was not honored.

36. Notably, SFBC not only failed to provide X.Y.'s parents with an explanation of the removal, they failed to follow their own policy which involved warnings, sitting out of activities, free time taken away and being sent home.

**D. Investigation and Supervision Concerns; Post-Camp Reported Exposure**

37. SFBC never conducted the neutral, child-appropriate investigation Ms. Tung had requested. Staff did not interview all participants. They did not use age-appropriate language to clarify what children meant. They did not consider whether the exercise itself involved touch. No individualized assessment was documented before excluding X.Y. No significance was given to X.Y.'s disability and how it manifests.

38. After X.Y. was removed, SFBC raised additional justifications for removing X.Y. from camps, including an unsubstantiated claim of "bedwetting." When the family retrieved his belongings, his bedding and clothing were clean and dry and this incident had not been previously mentioned to parents.

39. On July 2, after returning home, X.Y. disclosed that another camper had exposed his genitals in a bathroom in front of him and other boys. The family reported the incident to local police. On July 5, they notified SFBC. On July 8, the Program Administrator said SFBC would make a Child Protective Services referral. The family received no transparent follow-up about that report or any internal review conducted by SFBC.

40. X.Y. later disclosed that another student at camp had kicked him in the shin and repeatedly reported him to the counselors. X.Y. explained that he did not report the incident himself because he did not know how to respond and felt singled out and targeted by students and staff.

41. After July 8, X.Y.'s family was abruptly removed from the SFBC parent portal without notice or explanation. Despite repeated requests, SFBC has refused to meet with the family to explain what happened or to address parents concerns or X.Y.'s disability.

**E. Harm and Ongoing Risk**

42. SFBC's actions caused humiliation and emotional harm to a disabled boy who had found joy and community through music. They disrupted his music education, stripped him of his place in the Chorus, and excluded him from a program his family had invested in and trusted. The family also suffered economic losses, including non-refundable fees and related costs.

43. SFBC's leadership was repeatedly notified, in writing and verbally, of X.Y.'s disability and accommodation needs. Despite this actual knowledge, SFBC chose not to train staff, implement the requested modifications, or reconsider its exclusion decision. This failure to act despite clear notice constitutes deliberate indifference under the Americans with Disabilities Act and Section 504.

44. X.Y. intends to return to SFBC programs in the future if SFBC adopts ADA-compliant policies and practices. Without court-ordered reforms, he faces a real and immediate risk of continued exclusion and unequal access.

45. As a result of his SFBC's discrimination and treatment, X.Y. reports that he is sad and worried.

**FIRST CAUSE OF ACTION — ADA Title III (42 U.S.C. § 12181 et seq.)**

46. Plaintiff realleges paragraphs 1–45.

47. SFBC failed to make reasonable modifications to policies, practices, or procedures where necessary to afford equal access, including autism awareness, bathroom-proximity placement; structured transitions; brief, scheduled parent contact during a stressful incident; assignment to an experienced counselor; consultation with a familiar teacher; and a child-appropriate investigative process.

48. SFBC excluded Plaintiff from participation and denied the benefits of its services by removing him from a required camp tied to continued choir participation because of his disability.

49. Defendant acted with deliberate indifference to Plaintiff's federally protected rights. SFBC had actual knowledge of Plaintiff's disability and of the need for reasonable modifications repeatedly communicated by his parent, yet failed to take corrective action or implement agreed supports. SFBC's conscious disregard of a known, substantial risk of denying equal access caused emotional and educational harm to Plaintiff.

50. Plaintiff seeks declaratory and injunctive relief and attorneys' fees and costs under 42 U.S.C. § 12205.

**SECOND CAUSE OF ACTION — Unruh Civil Rights Act (Cal. Civ. Code § 51 et seq.)**

51. Plaintiff realleges paragraphs 1–45.

52. SFBC is a business establishment and denied full and equal accommodations, advantages, facilities, privileges, and services to Plaintiff because of disability and/or by violating the ADA.

53. Plaintiff seeks actual damages, statutory damages (not less than $4,000 per violation), and attorneys' fees and costs.

**THIRD CAUSE OF ACTION — Disabled Persons Act (Cal. Civ. Code §§ 54–55.3)**

54. Plaintiff realleges paragraphs 1–45.

55. SFBC denied full and equal access to its programs and services based on disability.

56. Plaintiff seeks actual damages, statutory damages (not less than $1,000), injunctive relief, and fees and costs.

**FOURTH CAUSE OF ACTION — Section 504 of the Rehabilitation Act (29 U.S.C. § 794) (In the Alternative)**

57. Plaintiff realleges paragraphs 1–45.

58. On information and belief, to be confirmed in discovery, SFBC receives federal financial assistance. Plaintiff was excluded from participation in, denied the benefits of, or subjected to discrimination solely by reason of disability.

59. SFBC acted with deliberate indifference to known accommodation needs, including refusing brief parent contact and failing to conduct an individualized assessment after repeated, specific requests.

60. Plaintiff seeks compensatory damages, injunctive relief, and fees and costs.

**FIFTH CAUSE OF ACTION — Breach of Contract**

61. Plaintiff realleges paragraphs 1–45.

62. Parents paid for a supervised, inclusive camp tied to the Chorus program and reasonably relied on SFBC's assurances. SFBC failed to provide the promised services and summarily removed the child.

63. Plaintiff seeks restitution and consequential damages.

**SIXTH CAUSE OF ACTION — Negligence / Negligent Supervision / Training**

64. Plaintiff realleges paragraphs 1–45.

65. SFBC owed a duty of reasonable care in supervising minors, training staff on disability accommodations, and handling incidents. It breached that duty, causing harm, including emotional distress.

66. Plaintiff seeks compensatory damages and costs.

**SEVENTH CAUSE OF ACTION — Intentional Infliction of Emotional Distress (In the Alternative)**

67. Plaintiff realleges paragraphs 1–45.

68. SFBC's conduct, including branding a disabled seven-year-old as untruthful, refusing brief parent contact during distress, and excluding him from a mandatory program without an individualized assessment, was outrageous and done with reckless disregard of the probability of causing severe emotional distress.

69. Plaintiff seeks compensatory and punitive damages, subject to proof.

**EIGHTH CAUSE OF ACTION — Unfair Competition Law (Bus. & Prof. Code § 17200)**

70. Plaintiff realleges paragraphs 1–45.

71. SFBC engaged in unlawful and unfair business practices, including violations of the ADA, Unruh, and DPA, and marketing an inclusive program while failing to provide reasonable modifications.

72. Plaintiff and his family suffered an economic injury in fact, including payment of non-refundable camp fees and related expenses, constituting "lost money or property" under § 17204.

73. Plaintiff seeks restitution and injunctive relief.

**NINTH CAUSE OF ACTION — Declaratory Relief (28 U.S.C. §§ 2201–2202)**

74. Plaintiff realleges paragraphs 1–45.

75. An actual controversy exists regarding SFBC's obligations under federal and state disability laws and Plaintiff's rights to equal access and reasonable modifications.

76. Plaintiff seeks a declaration of the parties' rights and duties consistent with the injunctive relief requested.

PRAYER FOR RELIEF

1. A declaration that the San Francisco Boys Chorus' policies and practices violated Plaintiff's rights.

2. An injunction requiring the San Francisco Boys Chorus to: (1) designate an Americans with Disabilities Act compliance officer and adopt a written reasonable-modification policy with timelines and documentation; (2) conduct individualized assessments, including any safety determinations, and consider reasonable modifications before excluding a child; (3) provide initial and annual staff training for administrators, counselors, teachers, and nurses on duties under the Americans with Disabilities Act, disability-inclusive communication, age-appropriate investigations, and parent-contact accommodations; (4) allow brief, scheduled parent contact as a regulation support for disabled minors during incidents; (5) honor medically indicated bathroom-proximity placements and adopt appropriate supervision and privacy standards for dormitories, bathrooms, and movement-based classes; (6) implement neutral incident-response procedures that include interviewing involved witnesses and issuing a written outcome; (7) prohibit retaliation, restore access where exclusions were made without an Americans with Disabilities Act compliant process, and remove adverse notations; (8) maintain a confidential log of modification requests and outcomes, conduct periodic audits, and provide counsel with compliance reports for two program years; and (9) publish the modification-request and appeal process in enrollment materials and on the website.

3. Statutory damages (not less than $4,000 per violation) and actual damages under the Unruh Civil Rights Act (California Civil Code § 51 et seq.).

4. Statutory damages (not less than $1,000) and actual damages under the California Disabled Persons Act (California Civil Code §§ 54–55.3).

5. Compensatory damages under Section 504 of the Rehabilitation Act (29 U.S.C. § 794), if federal financial assistance is established.

6. Restitution and consequential damages for breach of contract.

7. Compensatory damages for negligence and intentional infliction of emotional distress, and punitive damages to the extent allowed by law.

8. Restitution and injunctive relief under the Unfair Competition Law (Business and Professions Code § 17200 et seq.).

9. A tuition refund in the amount of $4292.48.

10. Attorneys' fees and costs, including under 42 U.S.C. § 12205, California Civil Code §§ 52 and 54.3, 29 U.S.C. § 794a, and/or California Code of Civil Procedure § 1021.5.

11. Pre-judgment and post-judgment interest.

12. Any further relief the Court deems just and proper.

DATED: October 7, 2025            By: /s/ Gabriela M. Torres

                                                   Attorney for Plaintiff